| | |
|---|---|
| 1 | HONORABLE RONALD B. LEIGHTON |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CASCADE MANUFACTURING SALES, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>PROVIDNET CO. TRUST, a Washington trust dba WORMWRANGLER.COM; BARRY RUSSELL, an individual,<br><br>Defendant. | Case No. C08-5433RBL<br><br>ORDER ON MOTION FOR PRELIMINARY INJUNCTION |

This matter is before the court on the Plaintiff Cascade Manufacturing's Motion for a Preliminary Injunction. [Dkt. #] Cascade is the manufacturer and seller of a composting bin it calls the "Worm Factory." Cascade has had a federally registered trademark on that term and a related logo since June 17, 2008. Cascade claims it has been using the term in association with its product since 2000. The bins utilize the natural work of earth worms to enhance and accelerate the composting process.

Defendant Providnet and its principal, defendant Barry Russell, market a competing product known as the "Gusanito[1] Worm Factory." Providnet was incorporated, and apparently has been marketing its product, since 2006. Cascade argues that Providnet's mark infringes on its protected mark, and seeks to enjoin the use

---

[1] Providnet's product is also known as the "Gusanito Factory of Worms." Its website is "wormwrangler.com."

ORDER
Page - 1

of the mark pending resolution of this lawsuit. [2]

## A. Background

Cascade provides evidence supporting its claim that it has spent time, money and effort developing its product and its mark, and that it is well known in its industry. It sells its "worm factories" in the U.S. and worldwide. It sells over the internet as well as through more traditional retailers. Cascade claims that Providnet markets a directly competing composting bin through various channels, including the internet, and that it does so to the same or a similar customer base.

The parties previously enjoyed some sort of business relationship, in whish Providnet would purchase Cascade's products for resale. According to Cascade, that agreement did not include any sort of license for Providnet to use the "worm factory" mark. Cascade claims that Providnet breached the agreement two years ago and that it owes Cascade approximately $10,000. Cascade claims that Providnet's competing product infringes on Cascade's protected name and logo, and that Providnet's efforts are actually causing customer confusion.

Providnet does not dispute that it is using the term "Gusanito Worm Factory" but claims that the term is not eligible for protection because it entered the lexicon prior to the date of Cascade's trademark. It also claims that the term is not likely to cause customer confusion, as the terms and logos are markedly different. And, it argues, even if it was so likely, Cascade (and its principal, Rhoades) consented to Providnet's use of the term Guisanito Worm Factory since 2003.

Providnet argues that Cascade and Barry Russell agreed prior to 2003 to jointly develop and market worm composting bins, and jointly recognized that the term "worm factory" had previously been used for a similar product marketed worldwide, including the U.S., by an Australian company known as RELN. Providnet claims that the parties agreed that that prior use precluded them from registering the term "worm factory." It provides evidence supporting its claim that Cascade was not incorporated until 2003, and that its 2008 trademark application claimed its first use of the term was March, 2003. Providnet argues that the parties agreed that Russell would use his expertise and marketing connections to assist in the marketing of the Cascade

---

[2] The Providnet/wormwrangler logo is at issue, but the logo, distinct from the Gusanito worm factory name, does not infringe on Cascade's mark. It is not similar and is not alleged to have caused, and is not likely to cause, customer confusion. The Motion for a Preliminary Injunction on the "logo" claim is DENIED.

product, which he did until he was "cut loose" by Rhoades and Cascade in 2006.

Providnet argues that it began marketing its Guisanito Worm Factory in 2003, and that it and Russell marketed both products from that time until 2006. Providnet applied to the USPTO to register the mark "Gusanito Factory of Worms" on July 23, 2008. The result of that application is not clear from the record supplied by the parties. At the same time, Providnet argues that it and Cascade were aware of third party uses of the term 'worm factory" prior to Cascade's 2003 incorporation. These include RELN, which has used the term since 1996, and T.K. Worm factory, which has used the term since 1998. Providnet also supplies news and trade accounts from 1996 through 2001 in which the term "worm factory" is used to describe the use of worms in the composting. Providnet argues that the term is generic, and that the balance of relevant factors tilts in favor of denying the Motion for a Preliminary Injunction.

For the reasons that follow, the Plaintiffs' Motion for a Preliminary Injunction on the defendant's use of the term Gusanito Worm Factory is GRANTED. Caascade's Motion for a Preliminary Injunction precluding Providnet from using its own 'wormwrangler" logo is DENIED.

**B. Preliminary Injunction Standard.**

The standard for granting a preliminary injunction balances the plaintiff's likelihood of success on the merits against the hardship to the parties. To prevail on a motion for preliminary injunction, a party must demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in the moving party's favor. These alternatives do not represent separate tests but rather represent extremes of a single continuum. The greater the relative hardship to the moving party, the less probability of success must be shown. *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).

In the unfair competition and Lanham Act context, one seeking an injunction must demonstrate it owns and has a protectable interest in a valid mark, and that the alleged infringer's use of the mark is likely to cause confusion. *See AMF Inc. V. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979).

**C. Likelihood of Success on the Merits.**

Plaintiff Cascade argues that it has met the Preliminary Injunction standard. It argues that it is likely to succeed on its Lanham Act (trademark infringement) claims, citing its mark and the similarity of the name Provident uses to market its product. Provident argues that the standard is not met, emphasizing that the

"worm factory" mark is not valid and that customer confusion is not likely to result.

**1. Validity of mark**.

Cascade argues that its USPTO registration is "prima facie evidence" of the validity of its mark. It claims it owns the mark and has a protectable interest in it. *See KP Permanent Make-Up, Inc. V. Lasting Impression, Inc.*, 408 F.3d 596 (9th Cir. 2005). Providnet argues that the term "worm factory" is highly descriptive, that it lacks a secondary meaning, and is likely generic.

**a. The term is not generic**.

A generic term explains "what are you?" as opposed to "where do you come from?" *See* 2 J.T. McCarthy On Trademarks and Unfair Competition §12:1 (2003); Defendant's Brief at 11 [Dkt. # 16]. Plaintiff correctly points out that a Federal trademark registration is entitled to a presumption that the term is not generic. *See* 15 U.S.C. § 1057(b).

As an initial matter, in its truly generic sense, the term "worm factory" would suggest a factory where worms are built, not a composting bin in which worms are effectively the factory workers. This suggests that the term as used by Cascade is not generic.

However, the parties agree that the Court's inquiry as to whether the "not generic" presumption is overcome is determined by reference to the following factors: (1) consumer surveys; (2) the use of the term in media publications; (3) the use of the term by competitors in the industry; (4) purchaser testimony concerning the term and (5) the use of the term by the parties. *See Boston Duck Tours, LP v. Super Duck Tours, LLC,* 531 F.3d 1, 18 (1st Cir. 2008). The issue is whether consumers understand the term to refer to only a particular producer's goods or to the goods themselves. *See Park N Fly v. Dollar Park N Fly*, 718 F. 2d 327, 330 (9th Cir. 1983).

Defendants argue that the term "worm factory" is, or has become, generic under this standard. They emphasize that the term has been fairly widely used in the media prior to the Plaintiff's claimed first use of the term. Plaintiff responds that the bulk of the media uses of the term "worm factory" at issue did not describe worm-powered compost bins. They argue that the articles that did use the term to describe a composting bin using worms reference the RELN and TK Worm Factory products, and emphasize that in each case the third parties used the term in a non-generic sense. RELN used the term as a mark, and TK Worm Factory sold worms, not composting bins. Plaintiffs argue that these "non-generic" uses support the protectability of the

mark, and are not particularly relevant to whether the mark has become generic.

The court does not agree that the media's prior use of the term, and its citation to the use of the term by RELN, supports Plaintiff's claim that the term is not generic. While not all of the articles using the term tied it to composting bins, some did. [*See* Carlson Dec. Dkt. #21, and Exhibits thereto.] And the use of the term by RELN (additional implications of this use will be discussed below) does not support the Plaintiff's claim that the term is not generic under the *Boston Duck Tours* standard. Instead, these uses support the Defendants' position that the term is generic.

The term's status as generic is also informed by reference to purchaser and consumer testimony. Defendants supply the testimony of Ms. Arlita Purser, who runs a vermicomposting business in California, and who has done business with both parties. The gist of her testimony is that she has purchased for re-sale the gusanito worm factory product since March of 2006 and the Cascade Worm factory since 2007. She claims that her customers have not been confused about the source of the different products. Plaintiffs point out, correctly, that she refers to the "genus" of the product as "worm bins," not "worm factories. Her testimony does support the claim that the phrase "worm factory" is used in each case as a mark. Defendant Russell's testimony similarly suggests that the product is a "worm bin" and that the term "worm factory" is used in both cases as a brand. Indeed, as they also emphasize, Defendants have also sought USPTO protection for the mark "Gusanito Worm Factory." Finally, Cascade provides evidence of internet "searches" supporting its claim that the term "worm bin" is used to generically describe vermiculture bins using worms, and that the term "worm factory" refers to Cascade's (and others') particular product.

This evidence supports Cascade's position that the term is not generic, and is instead a "unique source identifier" for the generic class of products known as worm bins. This, coupled with the presumption that the term is not generic, compels the court to determine in the context of a Motion for Preliminary Injunction , that the term is not generic, and is not invalid on that basis.

### b. The term is more than merely descriptive.

Defendants claims that if the term "worm factory"" is not generic, it is highly descriptive and lacks secondary meaning. This is a closer question. A descriptive mark defines a particular characteristic of the product (such as "honey roasted"), and does not require the exercise of any imagination. It is a "weaker" mark than suggestive marks, such as "Slickcraft boats," or fanciful/arbitrary marks such as "Kodak." Such marks

are not entitled to trademark protection unless they also acquire a secondary meaning.

A showing of secondary meaning requires the proponent to demonstrate that the descriptive phrase has become associated with a single commercial source. *See Tone Bros., Inc. V. Sysco Corp.*, 28 F.3d 1192 (Fed. Cir. 2004). Providnet argues that a plaintiff must make a clear and strong showing of secondary meaning in order to obtain a preliminary injunction in such cases (*citing Ralston Purina Co. v. Thomas J. Lipton, Inc*., 129 S.D.N.Y. 1972).

The term "worm factory" is not purely descriptive. As Cascade points out, the Ninth Circuit looks to two tests to determine if a mark is descriptive. The "imagination test" focuses on the extent of imagination required for a consumer to associate a given mark with the product it identifies. *See Golden Door, Inc., v. Odisho*, 646 F.2d 347, 350 (9th Cir. 1980). If a consumer must use more than a small amount of imagination to make the association, the mark is suggestive rather than descriptive. The term "worm factory" does not describe a composting bin using worms and worm castings; a consumer must use his or her imagination to some extent to make that connection.

The related, second test is the "need test," which looks at the extent to which a competitor actually needs to use the term to identify its product. If the term is 'needed" for a competitor to describe its product, the term is descriptive and not suggestive. *See Union Carbide Corp. v. Ever-Ready Inc.*, 5331 F.2d 366 97th Cir. (1976).

It cannot be said that Providnet "needs" to use the term worm factory to describe its worm composting bins. The words "worm" and "compost" and perhaps "bin" are needed; the word "factory," while useful and distinct, is not needed to describe or market a vermiculture product using worms and worm castings to enhance the composting process. As Cascade cleverly points out, the market is "crawling" with products incorporating the term "worm" without using the term "factory" to denote worm-related composting products. Under these tests, Cascade's mark is not merely descriptive; it is a stronger, suggestive mark.

While this determination may make the question of secondary meaning moot, it is worth noting that the Defendant is likely correct that the term ""worm factory" has not acquired the secondary meaning required for protection of a merely descriptive mark. The term is used by at least two third parties, one of whom is a direct competitor to the parties, and Providnet has produced evidence that the term is not associated exclusively with Cascade's product.

### B. Likelihood of confusion.

The second prong of the Preliminary Injunction standard is whether the alleged infringer's use is likely to cause confusion.

The "likelihood of confusion" test requires the fact finder to determine whether a "reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *See Dreamwerks Prod. Group, Inc*, 142 F.3d at 1129. In the Ninth Circuit, courts typically consider the following eight factors when analyzing the likelihood of confusion: (1) strength of the marks; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) defendant's intent and (8) likelihood of expansion. *Id.* This test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them. *See id.* at 1129-30, 1132.

Cascade provides evidence that the products (worm composting bins) and marks ("worm factory") are substantially similar, if not identical. It argues that Providnet's use of the term "worm factory" in connection with its competing product not only is likely to cause customer confusion, but that it has in fact caused such confusion. Cascade provides reference to an internet "board" evidencing confusion among consumers as to whether the products are separate, and as to which is which. It also points out that both companies market extensively on the internet, and use other similar marketing channels.

Providnet argues that the term is not a strong mark, for the reasons discussed above. It emphasizes its use of the term "Gusanito" and understates its use of Cascade's mark, "worm factory," arguing that its own term is a "composite mark." It argues that the terms "Gusanito worm factory" and "worm factory" are visually and aurally dissimilar, and are dissimilar in meaning. Providnet correctly points out that its "wormwrangler" logo is not at all similar to Cascade's logo.

Providnet also argues that the "degree of customer care" factor weighs in its favor, because the products are "highly specialized" and customers for these products are sophisticated. They argue that the sorts of "garden enthusiasts" who use such products should be expected to, and do, exercise greater than ordinary care in making their purchase selections. Finally, Providnet argues (as will be discussed below) that it did not "intentionally" violate Cascade's worm factory mark, because it used that phrase in connection with its own product with Cascade's knowledge and consent.

It is clear to the court that, assuming the mark is valid, Cascade has demonstrated that customers are likely to be confused by Providnet's use of "Gusanito worm factory" to identify its product, which directly competes with Cascade's 'worm factory." Indeed, there is anecdotal evidence that such confusion is already occurring, among the very customers Providnet claims would exercise more than ordinary care to avoid.

### C. Knowledge of and Consent to Use.

Providnet and Russell also argue that their use of the term "worm factory" was initially done with the knowledge and consent of Cascade and its principal, Mr. Rhoades. This argument is based on the apparently undisputed fact that the two principals worked together in the vermiculture industry before either of them marketed a worm bin, and then began developing worm bins together. It claims Cascade and Rhoades knew of Russell's sale of Providnet's composting bins, as well as Cascade's bins, as early as 2003. It argues that Cascade impliedly if not directly acquiesced in Providnet's use of the worm factory name from 2003 to the date of the lawsuit, and cannot now be allowed to object to those uses. *See Getty Petroleum Corp. v. Shore Line Oil Co., Inc.*, 642 F.Supp. 203 (E.D.N.Y. 1986).

Cascade points out that Providnet's argument has two components, and that it fails to support either of them as an evidentiary matter: (1) Russell and Providnet argue that their use of the mark was senior to Cascades's, and (2) that Cascade is guilty of laches in asserting its claim. As to the former, Providnet relies on the declarations of Barry Russell and a customer, Arlita Purser, to support its allegation that it used the mark "worm factory" in 2003. As Cascade points out, Purser does not make this claim; she claims only that she purchased Gusanito worm bins from defendants, beginning in 2006. Russell testifies that he marketed a Gusanito Worm Factory since 2003. He does not provide any evidentiary support (such as advertising or packaging) for this claim. In fact, Cascade provides a link to an archive of Mr. Russell's website dating to May 2004, and the first use of the term "worm factory" on that website is November 2006.

Mr. Russell's declaration actually supports Cascade's claim that Russell simply marketed Cascade's "worm factory" pursuant to the parties' agreement, in the 2003 time frame. He registered the trade names "Gusanito soil," "Providnet," "wormwrangler.com," and "Winemasters" with the State of Washington in 2003. He did not, as he claims, register the name "worm factory" at that time. Cascade has

established, and Russell and Providnet have failed to rebut, that Cascade's use of the term "worm factory" is senior to the use of that term by Providnet.

Providnet's laches argument also fails. This defense to a trademark infringement claim is triggered where a trademark holder "knowingly allows the infringing mark to be used without objection for a lengthy period of time." *See* Goto.com, Inc. v. Walt Disney Co., 202 F.3d 1199 (9th Cir. 2000). Russell and Providnet's "use" of Cascade's mark in the 2003 time frame was admittedly pursuant to an agreement which permitted Providnet to sell Cascade's product. That use was authorized and cannot support a laches defense. Providnet has not shown that Cascade delayed for an unreasonable amount of time before pursuing its rights in protecting the "worm factory" mark.

### D. Validity/Cancellation.

Providnet's final substantive argument is that Cascade's mark is subject to cancellation because it was improperly obtained. Providnet argues that Rhoade's USPTO application was fraudulent, in that he stated he "owned" the mark, while he knew that others, including RELN, had previously used the term in connection with a similar product.

Cascade correctly argues that the use of the term by third parties is not relevant in this action, as priority is determined between the *parties*. See *Lahoti v. Vericheck, In.c*, 2007 U.S. Dist LEXIS 91997 (W.D. Wash. 2007). Cascade also claims that RELN does not use the mark in the United States.

### 4. Irreparable Harm.

The final factor in the preliminary injunction analysis is weighing the impacts on each party. Obviously, the party which does not prevail on this motion is going to suffer harm: Cascade would have to compete in the marketplace with Providnet, who is trading on its mark; while Provident would have to immediately alter its advertising and packaging.

Providnet's primary argument in opposition to the preliminary injunction is that because Cascade has known if its competing use of the "worm factory" mark for five years, the threat of harm is not "imminent" and the harm is not "irreparable." The factual inaccuracy of this position is discussed above. For its part, Cascade correctly points out that because it has established the validity of its mark and the likelihood of confusion, irreparable harm is presumed. *See Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1315 (9th Cir. 1987).

**5. Bond.**

Providnet asks the court to require Cascade to post a $500,000 bond under rule 65. Fed. R. Civ. Proc. 65(c) provides:

> **(c) Security**. No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Providnet argues that it stands to lose $250,000 in sales and is likely to spend another $250,000 in altering its advertising and packaging, and the damage to its goodwill, in having to abandon its use of the mark.

Providnet provides evidence that its annual gross sales are something short of $150,000. It has not established that it will lose all of its sales if it is forced to use a different name for its worm bins. Nor has it provided evidence supporting the claim that changing the name would cost $250,000. For that reason, its request of a $500,000 bond is DENIED. The Court will Order Cascade to post a $25,000 bond in support of this Preliminary Injunction within 10 days.

The Plaintiff's Motion for a Preliminary Injunction is GRANTED.

IT IS SO ORDERED.

Dated this 12th day of November, 2008.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE