**HONORABLE RONALD B. LEIGHTON**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CASCADE MANUFACTURING SALES, INC., a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PROVIDNET CO TRUST, a Washington trust dba WORMSWRANGLER.COM; BARRY RUSSELL, an individual,<br><br>Defendants. | CASE NO: C08-5433RBL<br><br>CASCADE MANUFACTURING SALES, INC.'S TRIAL BRIEF<br><br>Trial Date: January 25, 2010 |

Pursuant to the Court's Scheduling Order issued on October 20, 2008 (Dkt. # 31) Cascade Manufacturing Sales, Inc. ("*Cascade*") hereby submits this trial brief.

## I.   INTRODUCTION

Cascade Manufacturing Sales, Inc. ("*Cascade*"), the owner of the federally registered WORM FACTORY trademark (the "*Mark*") asserts trademark infringement and unfair competition claims against Providnet Co Trust, d/b/a WormsWrangler.com ("*Providnet*") and Barry Russell ("*Russell*") (together "*Defendants*").  It is undisputed that Defendants used the Mark without permission from Cascade along with identical or nearly identical goods. Defendants have presented no colorable evidence of any authorization from Cascade to use the

Mark. While Defendants hazily claim that some sort of joint venture agreement existed between the parties which purportedly created rights in the Mark in favor of Defendants, Defendants could not describe the terms of this agreement. Moreover, during the course of discovery, they produced no emails, correspondence, or other documents constituting evidence of this agreement.

In addition to using the identical Mark, it is undisputed that Defendants also made minor changes to the Mark and used this confusingly similar version to identify goods identical or nearly identical to Plaintiff's goods. The variation of the Mark utilized by Defendants is likely to cause confusion, as the United States Patent and Trademark Office has already determined.

Defendants have also repeatedly marketed their products along with a "patent pending" language, even though they have produced no evidence of any pending patent applications or any registered patents. Defendants also claim that their products are "made in the USA," when in fact at least a substantial portion of the products are not made in the United States.

## II.   SUMMARY OF FACTS

Cascade intends to prove the following facts at trial.

### A.   CASCADE'S BUSINESS AND RIGHTS IN THE MARK

Since 1999, Plaintiff Cascade has engaged in the business of manufacturing and selling composting bins. Throughout its years of operation, Cascade has extensively promoted its products and has used the federally registered trademark, "WORM FACTORY" (the "Mark") (Registration number 3448973) to promote its compost bins. The Mark has been used in commerce by Cascade since at least 2004, and Cascade's use of the Mark has been substantially continuous and exclusive. Cascade is one of the preeminent manufacturers of composting bins and is well recognized in the industry. Cascade's recognition stems from the fact that it has spent a considerable amount of time, money, and effort to build strong brand recognition and associated goodwill; its registered trademark is a major repository of this goodwill, and undermining the trademark undermines the value of the effort spend in building Cascade's

brands and improving its sourcing and other processes. Cascade engages in the promotion and sales of its products through various channels of commerce, including the internet and traditional retail stores.

**B.    DEFENDANTS' VARIOUS BUSINESS ENTITIES**

Providnet is one of many "trusts" operated by Barry Russell. These "trusts" are essentially just an extension of Barry Russell's sole proprietorship, as they are not recognized by the IRS, and, in fact, Russell does not feel that he is required to pay federal income tax, either personally or with respect to any of the trusts – or "unincorporated business organizations," – as Mr. Russell often calls them.

Mr. Russell testified that he is the sole trustee for Providnet and Sandalwood and freely transfers funds and authorizes use of purported trademarks by both entities without any written documentation or corporate authorization whatsoever. Russell (through Providnet) operates the wormswrangler.com website (the "*Site*"). Russell and his various entities market and sell their composting bins through many channels, including direct sales and distribution through internet websites, such as Amazon and eBay.com, and through various commercial resellers or dealers. The composting bins sold by Defendants are similar in style and in the same cost-range as Cascade.

**C.    THE CONTRACTUAL RELATIONSHIP AND ITS TERMINATION**

Initially, Cascade and Defendants were parties to a re-seller agreement (the "*Agreement*") pursuant to which Defendants would sell products on behalf of Cascade, and Cascade would fulfill any orders procured by Defendants. The Agreement expired by its own terms in January, 2008.

Defendants defaulted on the Agreement in 2006 and ceased paying Cascade the amounts which Cascade was due. As a result, Cascade terminated the Agreement in late 2006. The Agreement does not contain any provisions for an ongoing trademark license between Cascade and Provident. Outside of the Agreement, Cascade has not authorized Defendants to use the

Mark or any variations of the Mark, and Defendants have introduced no colorable evidence contradicting this.

### D. DEFENDANTS' ACTS OF INFRINGEMENT

Following severance of the relationship between Cascade and Defendants, Defendants continued to use the Mark and variations of the Mark to sell Defendants' own composting bins. Defendants used the Mark itself on their own Site, on marketing materials, and through third party distributors. The Court entered an injunction on November 12, 2008 to prohibit further use of this Mark. Following entry of the Injunction, Defendants superficially altered the Mark (from "WORM FACTORY" to "FACTORY OF WORMS"); in fact, Defendants applied to the United States Patent and Trademark Office for rights in the confusingly similar variation of the Mark "GUSANITO FACTORY OF WORMS". The trademark office issued an office action rejecting the application on the basis that the GUSANITO FACTORY OF WORMS mark conflicted with Plaintiff's registered Mark (WORM FACTORY) on the basis of likelihood of customer confusion, and Plaintiff had priority. Defendants did not oppose this office action within the time allotted by the USPTO and thus Defendants mark was abandoned.

Defendants' acts of infringements have caused confusion among Cascade's customers or potential customers. One long-time Cascade customer who also sells composting bins attests that she received numerous queries from customers regarding the differences between the two brands of "worm factory" composting bins. Customers have asked about the difference between the composting bins sold by Providnet through the Site and those sold by Cascade. People have expressed confusion to Cascade's customers and associates as to the source of these two products. Additionally, people have expressed actual confusion in postings on the internet (in message boards).

In addition to trademark infringement, Defendants have engaged in unfair competition based on two acts: (1) Defendants have consistently marketed their products using a "patent pending" designation, even though no valid patent or patent application covers Defendants'

products and (2) Defendants have advertised their products as being "made in the USA," when this is untrue.

### III. RELEVANT LEGAL STANDARDS

### A. LANHAM ACT (TRADEMARK) CLAIMS

    1.    <u>General Lanham Act standards</u>.

Section 43(a) of the Lanham Act prohibits the use in commerce of "any word, term, name, symbol or device" which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods . . . by another person." 15 U.S.C. § 1125(a)(1). To establish trademark infringement in the Ninth Circuit, Cascade must demonstrate validity, priority and confusion. Specifically, Cascade must only establish that (1) its mark WORM FACTORY is valid; (2) that Cascade is the senior user of the WORM FACTORY mark, and (3) Defendants' use of WORM FACTORY or FACTORY OF WORMS is likely to cause confusion as to source, affiliation, approval or sponsorship in the marketplace. *See* <u>Conversive, Inc.</u>, 433 F. Supp. 2d at 1087.

Cascade need not establish either actual confusion or intent to confuse to establish a finding of likelihood of confusion. <u>J.B. Williams Co. v. Le Conte Cosmetics</u>, 523 F.2d 187, 191 (9th Cir. 1975), *cert. denied*, 424 U.S. 913 (1976). Rather, the Ninth Circuit uses the well established <u>Sleekcraft</u> factors to guide analysis of trademark infringement. In the context of products sold or marketed over the internet, the three most important <u>Sleekcraft</u> factors are "(1) similarity of the marks, (2) the relatedness of the goods or services, and (3) the simultaneous use of the Web as a marketing channel." <u>Brookfield</u>, 174 F.3d at 1055 n. 16; *see also* <u>GoTo.Com, Inc. v. The Walt Disney Co., et al.</u>, 202 F.3d 1199, 1205 (9th Cir. 2000) ("This trinity constitutes the most crucial body of the Sleekcraft analysis…"). These most important <u>Sleekcraft</u> factors are established in this case as a matter of law, to be discussed more fully below, and obviate analysis of the other factors, which also favor Plaintiff.

Courts presume consumer confusion where the defendant uses a mark registered with a registered mark with identical goods. Kelley Blue Book v. Car-Smarts, Inc., 802 F. Supp. 278, 287 (C.D. Cal. 1992) ("reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived"); *see also* Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991) (courts may infer likelihood of confusion); Dunkin' Donuts v. Queens Bakery, Inc., 216 F. Supp. 2d 31, 44 (E.D.N.Y. 2001) ("likelihood of confusion is inevitable").  Similarly, courts presume confusion, and therefore infringement, where a licensee continues to use a mark following termination of expiration of a license. AT&T Corp. v. Vision One Sec. Sys., 1995 U.S. Dist. LEXIS 11279 (S.D. Cal. July 27, 1995) ("sale of trademarked goods after termination of a license amounts to trademark infringement") (citing Bill Blass, Ltd. v. Saz Corp., 751 F.2d 152, 154 (3rd Cir. 1984)); Precision Door Serv. v. Bell, 2002 U.S. Dist. LEXIS 7429, 25-26 (N.D. Cal. Apr. 18, 2002) ("Continued use of a franchisor's or licensor's trademark after termination of the business relationship is likely to cause confusion among consumers." (citing Burger King Corp. v. Mason, 710 F.2d 1480, 1492 (11th Cir. 1983) (use of franchisor's trademark after termination of the license cognizable under the Lanham Act).)

2. <u>There is no dispute as to validity or priority</u>.

Registration of a mark on the United States Patent and Trademark Office's Principal Register "constitutes prima facie evidence of the validity of a registered mark and of the trademark owner's exclusive right to use the mark on the goods and services specified in the registration." Brookfield, 174 F.3d at 1047.  In addition, "federal registration of a trademark endows it with a strong presumption of validity." KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 604 (9th Cir. 2005).

Here, Cascade's WORM FACTORY mark is registered on the Principal Register (Reg. No. 3448973). Additionally, Defendants' attempted to register "GUSANITO FACTORY OF WORMS," and the USPTO rejected Defendants' attempt based on a likelihood of confusion with

Cascade's WORM FACTORY mark. Specifically, the USPTO found that the "commercial impression of [GUSANITO FACTORY OF WORMS] [was] the same as [WORM FACTORY]," and Defendants' goods and Cascade's goods "[were] clearly of a similar nature."

Cascade's registration is thus prima facie evidence of the validity of the Mark and Cascade's ownership therein. The USPTO's rejection of Defendants' attempt to register FACTORY OF WORMS is a further testament to the strength of the WORM FACTORY mark. Cascade satisfies the first prong of the test because "it owns a valid mark and thus a protectable interest."

3. Registration of the Mark also raises a presumption of senior use by Cascade.

A plaintiff that has a federally registered trademark is "is entitled to a presumptive first used date equivalent to the filing date of its trademark registration application." Brookfield, 174 F.3d at 1051 n.13. In this case, the registration reflects a first use in commerce date of March 2004, and Defendants have put forth no evidence – much less carried their burden – that they used the mark in commerce prior to this date. Thus, there is no dispute as to priority here.

4. A key jury question is whether Defendants had permission to use the Mark.

Defendants do not dispute that (1) Defendants utilized the Mark (an identical version of it); (2) along with identical goods. Defendants admitted this both in deposition and in filings with the Court. The key question is whether Defendants' use was somehow authorized.

Cascade and Defendants were party to a written agreement. Neither party disputes the Agreement which by its terms expired on January 2008. Moreover, Defendant Russell testified in a sworn affidavit that the Agreement was terminated as of 2006. Thus, the Agreement cannot authorize continued use of the Mark by Defendants and there is no dispute about this. Because Defendants utilized the Mark following expiration or termination of the Agreement, Defendants infringed on Cascade's Mark for the full extent of post-termination use. *See* 3 McCarthy on Trademarks and Unfair Competition, § 25.07[1] at 25-47 (3d ed.) ("once a license contract is terminated, there is no doubt that the ex-licensee has no authorization or consent to continue use

of the mark. After the license has ended, the ex-licensee must stop use of the mark"). United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 143 (3d Cir. 1981) ("once a license has expired, use of the formerly licensed trademark constitutes infringement"); Frisch's Restaurant, Inc. v. Elby's Big Boy of Steubenville, Inc., 661 F. Supp. 971 (S.D. Ohio 1987) (a licensee's use of licensed mark after the expiration of the license constitutes trademark infringement), *aff'd*, 849 F.2d 1012 (6th Cir. 1988).

Defendants have vaguely claimed some sort of contractual right other than from the Agreement to use the Mark, but have not (1) identified this contract, (2) identified any of the relevant terms, or (3) produced any documentation whatsoever related to this contract. While Mr. Russell testified that there was an agreement separate from the Agreement, he has conceded that "it [was] not a written agreement. It [was] a verbal agreement." Mr. Russell could not identify any specific terms of this purported agreement, testifying that "[t]he verbal understanding, the relationship that we had, was unlimited . . ." In Mr. Russell's words:

> The agreement was totally open ended, totally open ended. You know, I was really looking forward to all of us building a huge business together.

Mr. Russell further testified that in his understanding, either party could terminate the agreement without any penalty. Finally, to date Mr. Russell has not produced a single document purporting to validate the separate arrangement between Cascade and any Defendant; Mr. Russell's explanation for this was that an upgrade in computer systems caused email discussions between the parties relating to a separate agreement to become unavailable.

Additionally, there is no dispute about the likelihood of confusion presented by Defendants' use of the FACTORY OF WORMS variation, to be discussed below.

**B.    DEFENDANTS' ACTIONS MEET THE LIKELIHOOD OF CONFUSION STANDARD FOR TRADEMARK INFRINGEMENT**

While the Sleekcraft test guides establishment of likelihood of confusion, not all factors are necessary to establish likelihood of confusion, nor are the factors are equally relevant. In this

case, Cascade easily meets the Sleekcraft standard as modified for the internet era.

The determination of a likelihood of confusion is guided by the Sleekcraft factors, which are: "(1) the strength of the marks; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." Sleekcraft, 599 F.2d at 348-49.  However, the Sleekcraft factors are not exhaustive, and are flexible.  Brookfield, 174 F.3d at 1054.  Some factors are deemed more important than others, and "it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors."  Id. (citing Dreamwerks Prod. Group v. SKG Studio, 142 F.3d 1127, 1130-32 (9th Cir. 1998)).  For example, a finding of actual confusion is not necessary in order to determine there is a likelihood of confusion under the Lanham Act.  Hard Rock Café Licensing Corp. v. Pacific Graphics, Inc., 776 F. Supp. 1454, 1461 (W.D. Wash. 1991) (internal quotations omitted).

Courts have noted that in the context of the internet, the three most important Sleekcraft factors are "(1) similarity of the marks, (2) the relatedness of the goods or services, and (3) the simultaneous use of the Web as a marketing channel." Brookfield, 174 F.3d at 1055 n. 16; *see also* GoTo.Com, Inc. v. The Walt Disney Co., et al., 202 F.3d 1199, 1205 (9th Cir. 2000) ("This trinity constitutes the most crucial body of the Sleekcraft analysis…").  Each factor favors Cascade.  Moreover, an analysis of the remaining factors does nothing to tip the scales in favor of Defendants, and thus likelihood of confusion of use of the confusingly similar term "FACTORY OF WORMS" has been established as a matter of law in this case.

1. the marks are identical or nearly identical in this case.

The similarity of the marks is a critical issue in analyzing the Sleekcraft factors – the more similar the marks in terms of appearance, sounds and meaning, the more likely consumers will be confused as to the origin and sponsorship of the goods or services.  *See* GoTo.Com, 202 F.3d at 1205, Brookfield, 174 F.3d at 1054.  Similarities are weighed more heavily than

1  differences. *See* Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1392 (9th Cir. 1993).

2  Here, there is no question the variations of the mark used by Defendants is similar in
3  appearance, sound and meaning to Cascade's valid, distinctive federally registered WORM
4  FACTORY mark. Defendants used both an identical mark and a mark that is a merely
5  rearrangement of this identical mark. These marks were used extensively on documents varying
6  from order forms to extensive online advertising efforts. In fact, the most distinctive element of
7  each mark is FACTORY, which is an identical component of each mark. For all these reasons,
8  this factor undoubtedly weights heavily in favor of Cascade.

9       2.     The goods are also identical or nearly identical in this case.

10  The relatedness of the goods and services at issue is also a key Sleekcraft factor. This is
11  because "related goods are generally more likely than unrelated goods to confuse the public as to
12  the producers of the goods." Brookfield, 174 F.3d at 1055; *see also* GoTo.com, 202 F.3d at
13  1206. Moreover, "the greater the similarity between two product lines, the greater the likelihood
14  of confusion". Sega Enterprise, Ltd.com, 948 F. Supp. at 937.

15  Here, Cascade and Defendants are direct competitors, and it is undisputed that the
16  products sold by Cascade and Defendants are identical: worm composting bins. Indeed, in their
17  respective trademark applications, Cascade and Defendants used nearly identical descriptions.
18  Cascade described its product as a "[n]onmetal upward migrating composting worm bins," and
19  Defendants described their product as a "non-metal stackable worm farm bin." While this fact is
20  not controlling, the fact that the description of the goods that each used with the USPTO is nearly
21  identical is probative. In fact, there are only four competing live marks on the entire federal
22  register for goods in the same international class that utilize the terms "worm" and "bin," which
23  indicates that the parties operate in a relatively small industry, exacerbating the similarity of their
24  marks. Given that Cascade and Defendants sell products that are nearly identical, in a small
25  industry, and Defendants have used identical or nearly identical confusingly similar marks, there
26  is a high degree of a likelihood of confusion even without consideration of the other factors. *See*

Brookfield, 174 F.3d at 1056 (the virtual identity of the marks used with identical products or services results in a finding of a likelihood of confusion).  This factor undoubtedly heavily favors Cascade.

   3. The simultaneous use of the web as a marketing channel.

The simultaneous use of the web as a marketing channel is a factor that many courts have "recognized as exacerbating the likelihood of confusion." Brookfield, 174 F.3d at 1057 (citations omitted).  Here, both Cascade and Defendants utilize the internet as a marketing and advertising channel and each maintains at least one website on the internet.  In addition, both Cascade and Defendants sell composting bins through third party internet websites, such as eBay and Amazon.  Thus, similarity of marketing channels heavily favors Cascade.

   4. The other Sleekcraft factors.

In addition to the likelihood of confusion evidenced conclusively by the factors discussed above, Cascade has also put forth evidence of actual confusion (the fourth Sleekcraft factor) from two sources.  One of Cascade's long-time customers who also sells gardening and composting products attests to numerous instances of customers being confused as to the relationship between the two types of "worm factory" branded bins.  Similarly, customers have posted on the internet (in forums) questions and discussion indicating actual confusion as to the relationship between the Cascade and Defendants.  Also, evidence of actual confusion constitutes persuasive proof that future confusion is likely. International, Inc. v. Trek Bicycle Corp., 305 F.3d 894, 902 (9th Cir. 2002).  Until at least the middle of 2009, Defendants have persisted in using Google Adwords to promote its products as "Gusanito Factory of Worms" in advertising.

The strength of Cascade's mark (the first Sleekcraft factor) also favors Cascade, especially since the registered mark was sufficiently inherently distinctive to support a rejection of Defendants attempt at registering "GUSANITO FACTORY OF WORMS".

The intent of Defendants in this case (the seventh Sleekcraft factor) is established by their previous business relationship with Cascade and thus this factor heavily favors Cascade.

Although bad intent is not required to establish confusion, where the alleged infringer knowingly adopts a mark similar to that of another competitor, there is a presumption that the public will be deceived. Sleekcraft, 599 F.2d at 354; *see also* Conversive, Inc., 433 F. Supp. 2d at 1093.  Also registration of a mark provides constructive knowledge, and Defendants presented no evidence that they had obtained a competent opinion of counsel advising that they were free to use the WORM FACTORY mark without risk in light of Cascade's mark.  In fact, Barry Russell has testified that he relied on the "ethers" for advice on this matter. The remaining factors (sophistication of purchasers, likelihood of expansion) are at best neutral.  Application of the factors – which all heavily favor Cascade – is not a close call.  The inevitable conclusion is a likelihood of confusion.  However, even in a close case, doubts are to be resolved in favor of the senior user, in this case, Cascade. Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1404 n. 14 (9th Cir. 1997).

**C.    UNFAIR COMPETITION STANDARDS**

The unfair competition claim in this case is a federal unfair competition claim for use of a trademark in a manner likely to cause confusion as to the origin or quality of Cascade's goods, with respect to the WORM FACTORY Mark.  For this claim Russell and the Russell Entities are liable for unfair competition if (1) their worm bins are likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of defendants with Cascade, or (2) their worm bins are likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship, or approval of defendants' goods by Cascade. Westinghouse Electric v. General Circuit Breaker, 41 USPQ2d 1741 (9th Cir. 1997).  The standards for unfair competition are similar to the standards for trademark infringement, and the facts proven by Plaintiff will satisfy these standards.

**D.    WASHINGTON CONSUMER PROTECTION ACT STANDARDS**

For Cascade to recover from Russell and/or Russell Entities on its claims for unfair and deceptive trade practices, Cascade must show by a preponderance of the evidence that:

(1)     Russell and/or Russell Entities engaged in an unfair or deceptive act or practice;

(2)     The deceptive trade practice occurred in the course of Russell's or Russell Entities' business;

(3)     The deceptive trade practice affected the public interest;

(4)     Cascade was injured in the course of its business as a result of the deceptive trade practice; and

(5)     The deceptive trade practice has caused actual damages or losses to Cascade.

R.C.W. §19.86, et seq.

Cascade will demonstrate that Defendants engaged in deceptive trade practices with respect to:

(1) marketing defendants' competing products as "patent pending" when no pending patent existed; (2) marketing defendants' competing products as "Made in the U.S.A." when significant components of defendants' competing products did not in fact meet this standard and were made elsewhere.

Cascade alleges that it has been injured by defendant Russell and defendant Russell Entities' unfair and deceptive trade practices such as those enumerated above.

**E.    DAMAGES**

One of the key issues for the jury will be the extent of damages. With respect to the trademark claims, Cascade need only show the extent of revenues derived by Defendants from infringing uses of the Mark. It is then up to the Defendants to demonstrate their costs and what should be subtracted from revenues to arrive at profits. Defendants' responses to Cascade's discovery requests have been woefully inadequate. Defendants – by their own admission – have produced a patchwork of numbers which do not even approach a complete financial picture. In this circumstance, it will be up to the jury to weigh credibility as between the parties and assess damages as it sees fit. With respect to the Washington consumer protection act claims, Cascade is entitled to treble damages.

## IV.   CONCLUSION

As set forth above, there will be three questions for the jury in this case: (1) whether any agreement authorizes Defendants use of the "WORM FACTORY" mark or any variations of the mark; (2) whether Defendants have any valid patents or patent applications and whether Defendants' use of "patent pending," constitutes a violation of the Washington Consumer Protection Act, and finally (3) whether Defendants' use of "made in the USA" along with Defendants' products constitutes an unfair trade practice.  Perhaps the main issue for the jury is the extent and amount of damages to award to Plaintiff in this case.

Respectfully submitted, and dated this 11th day of January, 2010.

FOCAL PLLC
*/s/ Venkat Balasubramani*
Venkat Balasubramani, WSBA 28269
8426 40th Ave SW
Seattle, WA 98136
tel:    206 529-4827
fax:    206 260-3966
email:  *venkat@balasubramani.com*

**VERITRADEMARK**
*/s/ Daniel Bronski*
Daniel Bronski, WSBA 34385
VeriTrademark
1411 East Olive Way
Seattle, WA 98122
tel:    206 281-095
fax    206 774-0430
email:  *danny@veritrademark.com*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing Plaintiff's Trial Brief, via the Court's cm/ecf system. I also sent a copy of the foregoing documents to Barry Russell at his last known address on file. I certify under penalty of perjury of the laws of the State of Washington that the foregoing is true and correct, and that I executed this certificate of service on July 11, 2009.

*/s/ Venkat Balasubramani*

Venkat Balasubramani, WSBA 28269

CASCADE MANUFACTURING SALES, INC.'S
TRIAL BRIEF (C08-5433RBL) - 16

**FOCAL PLLC**
8426 40th Ave SW / Seattle, WA 98136
tel: (206) 529-4827/ fax: (206) 260-3966